UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

PATRICK PALUMBO,

    Petitioner,

v.                                **Case No: 6:16-cv-1278-Orl-18DCI**

SECRETARY, DEPARTMENT OF
CORRECTIONS and ATTORNEY
GENERAL, STATE OF FLORIDA,

    Respondents.

---

## ORDER

    THIS CAUSE is before the Court on a Petition for Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2254 by Patrick Palumbo ("Petitioner" or "Palumbo"). (Doc. 1, filed July 15, 2016). In compliance with this Court's Order (Doc. 3), Respondents filed a Response to Petition. (Doc. 16). Palumbo filed a Reply (Doc. 18), and the Petition is ripe for review. For the reasons set forth below, the Petition will be denied.

### I.    BACKGROUND AND PROCEDURAL HISTORY

    On September 22, 2005, the State of Florida charged Palumbo with sexual battery on a person less than twelve years of age by a person older than eighteen, in violation of Florida Statute § 794.011(2) (count one) and lewd and lascivious molestation (count two). (Ex. A at 122).[1] A jury found Palumbo guilty as charged. (*Id.* at 385-90). He was sentenced to life in prison on count one, and the conviction on count two was vacated. (*Id.* at 391-94, 475, 482, 485-86). Florida's Fifth District Court of Appeal affirmed. (*Id.* at 488); *Palumbo v. State*, 52 So. 3d 834 (Fla. 5th DCA 2011).

---

[1] Citations to exhibits are to those filed by Respondents on March 3, 2017. (Doc. 15). Citations to the trial transcript, located in Exhibit B, will be cited as (T. at ___).

On November 9, 2012, Palumbo filed a motion for post-conviction relief pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure ("Rule 3.850 Motion"). (Ex. E at 1). He filed an amended motion on May 9, 2013. (*Id.* at 298). The motions were denied by the post-conviction court in two separate orders. (Ex. at 363, 403, 417). On May 31, 2016, Florida's Fifth District Court of Appeal affirmed. (Ex. F-43).

## II.  LEGAL STANDARDS

### A.  The Antiterrorism Effective Death Penalty Act (AEDPA)

Pursuant to the AEDPA, federal habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

(1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). This standard is both mandatory and difficult to meet. *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014).

"Clearly established federal law" consists of the governing legal principles, rather than the *dicta*, set forth in the decisions of the United States Supreme Court at the time the state court issued its decision. *White*, 134 S. Ct. at 1702; *Carey v. Musladin*, 549 U.S. 70, 74 (2006) (citing *Williams v. Taylor*, 529 U.S. 362, 412 (2000)). Even if there is clearly established federal law on point, habeas relief is only appropriate if the state court decision was "contrary to, or an unreasonable application of," that federal law. 29 U.S.C. § 2254(d)(1). A decision is "contrary to" clearly established federal law if the state court either: (1) applied a rule that contradicts the governing law set forth by Supreme Court case law; or (2) reached a different result from the Supreme Court

2

when faced with materially indistinguishable facts. *Ward v. Hall*, 592 F.3d 1144, 1155 (11th Cir. 2010); *Mitchell v. Esparza*, 540 U.S. 12, 16 (2003).

A state court decision involves an "unreasonable application" of the Supreme Court's precedents if the state court correctly identifies the governing legal principle, but applies it to the facts of the petitioner's case in an objectively unreasonable manner, *Brown v. Payton*, 544 U.S. 133, 134 (2005); *Bottoson v. Moore*, 234 F.3d 526, 531 (11th Cir. 2000), or "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Bottoson*, 234 F.3d at 531 (quoting *Williams*, 529 U.S. at 406). The petitioner must show that the state court's ruling was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *White*, 134 S. Ct. at 1702 (quoting *Harrington v. Richter*, 562 U.S. 86 (2011)).

Notably, even when the opinion of a lower state post-conviction court contains flawed reasoning, the federal court must give the <u>last</u> state court to adjudicate the prisoner's claim on the merits "the benefit of the doubt." *Wilson v. Warden, Ga. Diagnostic Prison*, 834 F.3d 1227, 1235 (11th Cir. 2016), *cert granted Wilson v. Sellers*, No. 16-6855, 137S. Ct. 1203 (2017). A state court's summary rejection of a claim, even without explanation, qualifies as an adjudication on the merits—warranting deference. *Ferguson v. Culliver*, 527 F.3d 1144, 1146 (11th Cir. 2008). Therefore, to determine which theories could have supported the state appellate court's decision, the federal habeas court may look to a state post-conviction court's previous opinion as one example of a reasonable application of law or determination of fact; however, the federal court is not limited to assessing the reasoning of the lower court. *Wilson*, 834 F.3d at 1239.

Finally, when reviewing a claim under § 2254(d), a federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct[,]" and

3

the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *Burt v. Titlow*, 134 S. Ct. 10, 15 (2013) ("[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.") (quoting *Wood v. Allen*, 558 U.S. 290, 293 (2010)).

## B.    Ineffective Assistance of Counsel

In *Strickland v. Washington*, the Supreme Court established a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance. 466 U.S. 668, 687-88 (1984). A petitioner must establish that counsel's performance was deficient and fell below an objective standard of reasonableness and that the deficient performance prejudiced the defense. *Id.* This is a "doubly deferential" standard of review that gives both the state court and the petitioner's attorney the benefit of the doubt. *Burt*, 134 S. Ct. at 13 (citing *Cullen v. Pinholster*, 131 S. Ct. 1388, 1403 (2011)).

The focus of inquiry under *Strickland*'s performance prong is "reasonableness under prevailing professional norms." *Strickland*, 466 U.S. at 688-89. In reviewing counsel's performance, a court must adhere to a strong presumption that "counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. Indeed, the petitioner bears the heavy burden to "prove, by a preponderance of the evidence, that counsel's performance was unreasonable[.]" *Jones v. Campbell*, 436 F.3d 1285, 1293 (11th Cir. 2006). A court must "judge the reasonableness of counsel's conduct on the facts of the particular case, viewed as of the time of counsel's conduct," applying a "highly deferential" level of judicial scrutiny. *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000) (quoting *Strickland*, 466 U.S. at 690).

As to the prejudice prong of the *Strickland* standard, Petitioner's burden to demonstrate prejudice is high. *Wellington v. Moore*, 314 F.3d 1256, 1260 (11th Cir. 2002). Prejudice "requires

4

showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. That is, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

## III.    ANALYSIS

Palumbo raises nine grounds of ineffective assistance of counsel and one claim of cumulative error in his § 2254 petition. The first eight grounds were raised in Petitioner's Rule 3.850 Motion, and affirmed by Florida's Fifth District Court of Appeal without a written opinion. (Ex. F at 43).    Accordingly, these grounds are exhausted.    The silent affirmance of the post-conviction court is entitled to deference, and the Court must determine whether any arguments or theories could have supported the appellate court's decisions. *Wilson*, 834 F.3d at 1235. Each ground will be addressed separately.

### A.    Ground One

Palumbo asserts that Counsel was ineffective for failing to challenge for cause or use a peremptory strike to remove Juror Reynolds from the jury panel. (Doc. 1 at 18). Palumbo takes issue with Reynolds' response to a question regarding a prior crime that had been committed against her.  When asked whether anyone had been arrested for the crime, Reynolds stated: "No. Understand that. I accept that. Also, that's not the point. My mind goes right toward whatever it was that he did, or is accused of doing.  But something happened that wasn't right or a child wouldn't have said that.  In my mind he's partially guilty of something." (T. at 140).  Reynolds then affirmed that her opinion had no bearing on her ability to sit on the case. (*Id.*).[2] Palumbo

---

[2] It is unclear from the trial transcript whether Reynolds was referring to her opinion regarding the veracity of children or the crime to which she had been a victim when she made this statement.

raised this claim in his first Rule 3.850 Motion. It was denied because Palumbo had expressed satisfaction with the jury panel and had ratified the jury selection procedure. (Ex. E at 403). The record supports the state courts' rejection of Ground One.

The Sixth Amendment guarantees the accused a trial by an impartial jury in federal criminal prosecutions. U.S. Const. amend VI. The Due Process Clause of the Fourteenth Amendment guarantees the same right to the accused in state criminal prosecutions. *Duncan v. Louisiana*, 391 U.S. 145, 149 (1968). As with federal law, the test for determining juror competency in the Florida courts is "whether the juror can lay aside any bias or prejudice and render his verdict solely upon the evidence presented and the instructions on the law given to him by the court." *Lusk v. State*, 446 So.2d 1038, 1041 (Fla. 1984).

The Eleventh Circuit has cautioned that courts applying *Strickland* must "defer to trial counsel's performance and eschew the distorting effects of hindsight" when interpreting a prospective juror's statements and trial counsel's decision to leave that person on the jury. *Harvey v. Warden, Union Correctional Institution*, 629 F.3d 1228, 1247 (11th Cir. 2011) (internal quotations omitted); *see also Babb v. Crosby*, 197 F. App'x 885, 887 (11th Cir. 2006) ("the Supreme Court has not concluded that a lawyer who leaves an arguably biased juror on a jury is *per se* ineffective"). Moreover, "[a]ssessing jurors during voir dire also requires an evaluation of demeanor and credibility. Review of counsel's performance is highly deferential in any case, but the case for deference is even greater when counsel is evaluating credibility." *Bell v. United States*, 351 F. App'x 357, 360 (11th Cir. 2009) (internal citation omitted).

Palumbo has adduced no evidence, other than the transcript of the jury selection proceeding, to support his claim that trial counsel had an obligation to strike Reynolds from the jury pool. Prior to Reynolds' suspect statement, the trial judge asked the panel whether any of the venire had bias or prejudice against Palumbo or the state, and Reynolds tacitly indicated that she

was not biased and could sit as an impartial juror. (T. at 46-51, 61-62). Later, several other jurors expressed an opinion that they thought it unlikely a child would fabricate an allegation of molestation. (T. at 156-64). The state then asked whether "[a]nybody else have a similar opinion as to Mrs. Rodriguez, Mr. Sullivan, and Mr. Belfi, they would be bias and because it's a child making the accusations, they would be bias toward the state?" (*Id.* at 165). Reynolds did not express agreement with the other jurors' bias. Thereafter, Counsel asked the jurors several times if they could be fair and impartial, and Reynolds again tacitly indicated that she could. (*Id.* at 172-84). Palumbo, who was present in the courtroom during the entire voir dire, affirmed that he found the jury acceptable. (T. at 84-87). Reynolds was given multiple opportunities to affirm her alleged bias and did not do so. Palumbo has not shown that no competent counsel would have failed to strike Reynolds from the jury panel. *See Chandler v. United States*, 218 F.3d 1305, 1314-15 (11th Cir. 2000) ("[B]ecause counsel's conduct is presumed reasonable, for a petitioner to show that the conduct was unreasonable, a petitioner must establish that no competent counsel would have taken the action that his counsel did take.").

Moreover, a habeas petitioner who challenges the impartiality of a juror after the verdict is returned in his state trial "is entitled to habeas relief only upon a showing that the juror was actually biased or incompetent." *Rogers v. McMullen*, 673 F.2d 1185, 1190 (11th Cir. 1982). Palumbo has made no such showing, and the record does not support such a showing. In fact, during its charge to the jury, the trial court specifically instructed that the state had the burden of proof and that the jury's verdict "should not be influenced by feelings of prejudice, bias or sympathy." (T. at 491-92). Jurors are presumed to follow directions, *Weeks v. Angelone*, 528 U.S. 225, 234 (2000), and Palumbo has offered nothing to rebut that presumption. Palumbo cannot show that trial counsel performed deficiently, or that any deficient performance prejudiced his defense.

7

The state court's adjudication of Ground One was neither contrary to *Strickland* nor based upon an unreasonable determination of the facts. Ground One is denied.

## B. Ground Two

Palumbo asserts that Counsel was ineffective for failing to challenge as untimely the State's motions in limine, "which sought to keep any indication of the sexually charged atmosphere and drug use in the Light household out of evidence." (Doc. 1 at 24).[3] Palumbo concedes that Counsel objected to the motions, but "[a]t no time did Counsel ever object to the State's motions on the grounds that they were untimely, nor did he mention that the motions were a violation of Mr. Palumbo's right to due process or his Sixth Amendment right to present a defense." (*Id.* at 25). Palumbo asserts that, because the evidence was excluded, he was forced to testify in his own defense. (*Id.* at 27).

Palumbo raised this claim in his Rule 3.850 Motion, and it was denied by the post-conviction court. The court recognized that the prior judge had issued an order directing the parties to ensure that all pre-trial motions were heard at least seven days prior to trial. (Ex. E at 365). However, the court determined that "nothing in the Florida Rule of Criminal Procedure 3.190 precluded the trial court from considering a motion in limine filed by either side immediately prior to trial." (*Id.*). The post-conviction court then addressed the evidence at issue:

> Furthermore, the Court allowed the parties to discuss the issues in detail prior to the start of the trial. Counsel agreed with the State to keep out any reference to drug use by Defendant and by the victim's father. The Court granted the motion in limine with the caveat that anything relating to the day of the incident could be used, agreeing to allow the parties to proffer any such evidence before seeking to introduce it.
>
> As for the threesome, the State advised that during depositions, Ray Light, Jessica Light, and Holly Prong all testified that it never

---

[3] The motions in limine sought to keep out evidence of a sexual threesome in the Light home, testimony regarding the victim's sexually deviant activity, and rampant drug use in the home, all of which Palumbo planned to use to argue to the jury that the victim initiated contact with him while he was sleeping. (Ex. E at 364).

occurred and the victim testified she had never seen anything like that. Counsel argued such evidence was relevant to show that the child knew sexual terms based on what was going on in the house. The Court ruled counsel could ask any of the adults if they were having sex in the living room on the night in question but could not attempt to destroy their credibility by a method not provided for in the Rules of Evidence. The Court also ruled counsel could ask the victim if she saw anything that particular night.

The record is clear the Court gave careful and through consideration to the issues raised in the motions in limine during the hearing conducted immediately prior to trial. There is no reasonable probability the rulings would have been different if the State had filed the motions earlier or if counsel had objected to the State's failure to do so.

(Ex. E at 365-66). The record supports the state courts' rejection of Ground Two.

First, Palumbo cannot demonstrate Counsel's deficient performance. Reasonable competent counsel could have declined to argue that the motions in limine were untimely because, as noted by the post-conviction court, nothing in the Florida Rules of Criminal Procedure precludes a party from raising an untimely motion to exclude evidence.[4] To the contrary, Florida law allows reconsideration of evidentiary rulings throughout the course of trial. *See Hawker v. State*, 951 So. 2d 945, 950 (Fla. 4th DCA 2007) ("It is well-settled that motion in limine rulings are subject to change during trial as the trial court develops an understanding of the facts and circumstances of the case."); *McCallister v. State*, 779 So. 2d 615, 615 (Fla. 5th DCA 2001) ("A trial court's pre-trial ruling on a motion in limine is tentative because the shifting sands of the trial in progress may cause a trial judge to rethink an earlier evidentiary ruling based on a maturing understanding of the case."). Counsel does not provide ineffective assistance when he fails to raise a futile or non-meritorious claim. *Chandler v. Moore*, 240 F.3d 907, 917-18 (11th Cir. 2001).

---

[4] Although Petitioner now argues that the post-conviction court erroneously determined that Rule 3.190 of the Florida Rules of Criminal Procedure applied to the specific motions in limine at issue, a state court's interpretation of state law, including one announced in a post-conviction order, binds a federal court sitting in habeas corpus. *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005).

Next, Palumbo cannot demonstrate *Strickland* prejudice. The evidence he wanted to admit was clearly inadmissible under the Florida Rules of Evidence. The prosecutor and Counsel discussed several discovery issues prior to trial, and the prosecutor told the trial judge that "certain items, issues came up during the course of the deposition I don't think are relevant during the course of trial." (T. at 4). Both sides agreed to keep out any mention of drug use by the defendant and by the victim's ("A.L.'s") father before the incident. (*Id.*). Counsel argued that drug and alcohol use on the night of the crime was relevant because A.L. was in the household. (*Id.* at 6). The Court told Palumbo: "If you deem it necessary to try and bring that out because it's relevant, any drug use, why don't you let me know in advance. We'll remove the jury. We can proffer that testimony before the jury hears it and see where it goes from there." (*Id.* at 7). The prosecutor then asked to exclude any testimony regarding alleged sexual threesomes that may have occurred between A.L.'s parents and aunt. (*Id.*). The prosecutor noted that each witness had denied that anything like that ever happened. (*Id.*). When asked about the relevance of such testimony, Counsel argued that A.L. may have seen such activity and gleaned her sexual knowledge from watching it. (*Id.*). After considerable discussion on the issue, the trial court told Counsel:

> You can ask, ask about sex in the living room. If there is some indication that the child perhaps saw that, but if we're just speculating once again and you're asking a jury to speculate on evidence, you have tried enough cases. You know that's not proper. Any reasonable fact which can or any reasonable scenario which can arise from the evidence, I'll certainly allow, but if we're just going out on a limb here, saying they had sex in the living room five different times, she must have heard something or seen something that's speculation. We don't know, the house isn't sound proof. We don't know if the child was three hundred feet in a bedroom way off at the other end of the house.

(T. at 16-17). Clearly—with or without a motion in limine—had Counsel attempted to introduce evidence of the "sexually charged" nature of the Light household without any showing that A.L. had witnessed such, the evidence would have been excluded; the trial court specifically said so.

Because Palumbo fails to show that the evidence would have been admitted absent Counsel's failure to object, he cannot demonstrate *Strickland* prejudice.

Palumbo cannot show that trial counsel performed deficiently, or that any deficient performance prejudiced his defense. The state court's adjudication was neither contrary to *Strickland* nor based upon an unreasonable determination of the facts. Ground Two is denied.

### C.     Ground Three

Palumbo asserts that Counsel was ineffective for failing to properly preserve the objectionable issues associated with the State's motions in limine. (Doc. 1 at 31). Specifically, he argues that while Counsel objected to the trial court's ruling on the state's motions in limine:

> Without the proffer of the excluded testimony of Avery Light, Holly Prong Hughes, Raymond Light and Warren Light, the appellate court is unable to determine whether their specific testimony may have been admissible. Because trial Counsel failed to proffer this excluded testimony, the appellate court could make no ruling and Mr. Palumbo was severely prejudiced.

(Doc. 1 at 32). Palumbo raised this issue in his Rule 3.850 Motion, and the post-conviction court denied the claim because Palumbo had been allowed to proffer the testimony of one witness at trail regarding the sexual activity that occurred in A.L.'s household, but the trial court concluded that any testimony about the sexual activity in the house that did not involve the child was excluded as irrelevant. (Ex. E at 366). Therefore, the post-conviction court concluded that Palumbo could not demonstrate prejudice because there is no probability that the trial court would have allowed Palumbo to proffer additional witnesses regarding this issue. (*Id.*). The record supports the state courts' rejection of Ground Three.

Where, as here, a petitioner raises the unusual claim that trial counsel, "while efficacious in raising an issue, nonetheless failed to preserve it for appeal, the appropriate prejudice inquiry asks whether there is a reasonable likelihood of a more favorable outcome on appeal had the claim been preserved." *Davis v. Sec'y, Dep't of Corr.*, 341 F.3d 1310, 1316 (11th Cir. 2003); *see also*

*Roe v. Flores-Ortega*, 528 U.S. 470, 474 (2000). In other words, Palumbo must present this Court with evidence showing a reasonable likelihood that he would have prevailed on appeal had trial counsel proffered the testimony of Avery Light, Holly Prong Hughes, Raymond Light and Warren Light. Palumbo has not made this showing.

At best, Palumbo speculates that the appellate court *might* have granted relief had Counsel proffered the testimony of these witnesses. However, he has not provided any evidence to the Court in support of his assertions.[5] He has not produced a sworn statement of their putative testimony. Consequently, the claim is too speculative to warrant relief. *See Johnson v. Alabama*, 256 F.3d 1156, 1187 (11th Cir. 2001) ("Johnson offers only speculation that the missing witnesses would have been helpful. This kind of speculation is 'insufficient to carry the burden of a habeas corpus petitioner.'") (quoting *Aldrich v. Wainwright*, 777 F.2d 630, 636 (11th Cir. 1985)); *see also United States v. Ashimi*, 932 F.2d 643, 650 (7th Cir. 1991) ("[E]vidence about the testimony of a putative witness must generally be presented in the form of actual testimony or by the witness or on affidavit. A defendant cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim."). Because Palumbo has not demonstrated *Strickland* prejudice, the state court reasonably denied Ground Three.

### D.    Ground Four

Palumbo asserts that Counsel was ineffective for failing to challenge ten-year-old A.L.'s competency to testify. (Doc. 1 at 37). He asserts that the events at issue happened four to six years before trial, but A.L. could not remember everything she had gotten for her birthday or for

---

[5] To the extent Palumbo now urges that it was Counsel's job to investigate and find the evidence that is now missing, he misunderstands his burden on federal habeas corpus review. In a § 2254 petition, the burden of proof is on the habeas petitioner "to establish his right to habeas relief and he must prove all facts necessary to show a constitutional violation." *Blankenship v. Hall*, 542 F.3d 1253, 1270 (11th Cir. 2008) (citation omitted); *see also Smith v. Wainwright*, 777 F.2d 609, 616 (11th Cir. 1985) (holding that a general allegation of ineffective assistance of counsel is insufficient; a petition must allege specific errors in counsel's performance and <u>facts</u> showing prejudice).

Christmas. (*Id.*). He also urges that Counsel was ineffective for failing to object to the lack of questioning about A.L.'s "sense of moral obligation and duty to tell the truth at trial." (*Id.*).

Palumbo raised this claim in his Rule 3.850 Motion, and the post-conviction court denied it on both *Strickland* prongs. The court found that Counsel had no grounds on which to object to the competency determination, and, had he done so, "the Court's ruling would have been no different." (Ex. E at 367). The post-conviction court determined that the "colloquies were adequate as a matter of law, and the victim, who was [ten and a half] years old at the time of the trial, was reasonably articulate and capable of remembering some specific details." (*Id.*). The record supports the state courts' rejection of Ground Four.

In Florida, "whether a child witness is competent to testify is based on 'his or her intelligence, rather than his or her age, and, in addition, whether the child possesses a sense of obligation to tell the truth.'" *Floyd v. State*, 18 So. 3d 432, 443 (Fla. 2009) (quoting *Lloyd v. State*, 524 So. 2d 396, 400 (Fla. 1988)). In evaluating the competency of a child witness, the trial court should consider the following: "(1) whether the child is capable of observing and recollecting facts; (2) whether the child is capable of narrating those facts to the court or to a jury; and (3) whether the child has a moral sense of obligation to tell the truth." *Id.* at 444 (quoting *Griffin v. State*, 526 So. 2d 752, 753 (Fla. 1st DCA 1988)). A trial court has discretion to determine whether a witness is competent to testify. *Id.*

As noted by the post-conviction court, A.L.'s competency was evaluated both at a pre-trial hearing, and at trial where the court and Counsel had an opportunity to observe her demeanor. (Ex. E at 367). At the pre-trial hearing, the court questioned A.L. about the difference between truth and a lie, and she understood the difference. (*Id.* at 373-74). A.L. recognized that it would be "really bad" if she were to tell a lie. (*Id.* at 374). At trial, the prosecutor questioned A.L., and she knew the difference between truth and a lie and recognized her obligation to tell the truth. (T. at

268-69). Based on the standards set forth by the Florida Supreme Court in *Floyd*, reasonable competent counsel could have concluded that the trial court adequately evaluated A.L.'s competency and that she was capable of observing and recollecting facts, capable of narration with regard to those facts, and had a moral sense of the obligation to tell the truth. *See Griffin*, 526 So.2d at 753. Moreover, other than point to the fact that the child could not remember everything she had gotten for Christmas or her birthday, Palumbo does not support his apparent assertion that A.L. was actually incompetent to testify. Accordingly, he cannot demonstrate that he suffered prejudice from Counsel's failure to challenge her competency.

Palumbo has satisfied neither *Strickland* prong. Accordingly, the state court reasonably denied Ground Four.

### E.    Ground Five

Palumbo asserts that Counsel did not adequately cross examine A.L. on certain prior inconsistent statements. (Doc. 1 at 41). Specifically, he urges that Counsel should have impeached A.L. with prior statements she made regarding whether she was asleep or awake immediately before the incident and whether her panties were completely removed by Palumbo or merely pulled down. (*Id.*). Palumbo raised this claim in his Rule 3.850 Motion, and the post-conviction court noted that Counsel's cross examination of the ten-year-old, "consisted almost entirely of impeaching her with prior statements" and that Counsel "argued the inconsistencies during closing arguments." (Ex. E at 368). The post-conviction court also determined that Palumbo could not demonstrate prejudice because there was "no reasonable probability the outcome of the trial would have been different if counsel had asked different or addition questions" during trial. (*Id.*).

Ground Five fails to satisfy *Strickland*'s performance prong. Prior to Counsel's cross examination, Counsel, the prosecutor, and the trial court discussed the inconsistencies in A.L.'s versions of events. (T. at 292-304). Counsel was aware that A.L. made prior inconsistent

statements regarding the position of her underwear during the incident, whether the incident happened in the morning or afternoon, and whether she was asleep or awake when Palumbo pulled her on top of him. The state argued that the differences were not material:

> STATE: So whether or not he wants to impeach on the panties or underwear issue, I don't believe is material. Second of all, I don't think it rises to the level [Counsel] is claiming that it does.
>
> COURT: What are we talking about? Are we talking about panties versus no panties?
>
> COUNSEL: Yes.
>
> COURT: And what else?
>
> COUNSEL: Sleeping, there is another, sleeping versus nonsleeping. She talked about out of court that she got up on his belly, fell asleep, woke up. That's when this happened.
>
> . . .
>
> COURT: I've got to tell you – I have to tell you, Mr. George, on those there, I'm not sure it will be a jury question. I'm not sure that – I think the jurors are smart enough to understand people make mistakes. Maybe the prior testimony is true, what she said here is not. It's not my job to figure it out. People get impeached all the time on prior testimony or substantive evidence of a prior statement that can come in, but you know you've to look how is the jury going to look – that the jury's going to look at that time as impeachment no matter what you tell -- if they want to believe this little girl, they believe her. If they don't want to believe her, they won't believe her. They understand that she's ten years old. Whatever they do with that, they do with that.

(*Id.* at 292-304). Afterwards, Counsel cross-examined A.L. and impeached her with several inconsistencies in her accounts of the incident, but he did not question whether Palumbo completely removed her panties[6] or whether she was asleep or awake when he initiated sexual contact with her. (*Id.* at 304-21, 325-26).

---

[6] Counsel did question the victim as to whether she was wearing panties or only pajama bottoms during the incident. (T. at 316-17).

Given that Counsel was aware of the inconsistencies at issue in this claim, but chose not to raise them, the post-conviction court could have determined that Counsel made a strategic decision not to do so. Strategic decisions, such as the specific questions to ask on cross examination, are virtually unassailable on federal habeas review. *See Provensano v. Singletary*, 148 F.3d 1327, 1332 (11th Cir. 1998) (citing *Strickland*, 466 U.S. at 690); *Fugate v. Head*, 261 F.3d 1206, 1219 (11th Cir. 2001) (The decision to cross-examine a witness and the manner in which the cross-examination is conducted are tactical decisions "well within the discretion of a defense attorney."). Counsel could have decided against drawing additional attention to the fact that A.L. accused Palumbo of either completely removing or pulling down her panties when she was between five and seven years old. In addition, Counsel was questioning a sympathetic witness about a traumatic incident. Using heavy-handed tactics against A.L. risked alienating the jury.[7] Palumbo fails to show that no reasonable competent attorney would have failed to impeach A.L. on these issues. The post-conviction court's rejection of Ground Five was neither contrary to *Strickland* nor based upon an unreasonable determination of the facts, and the claim is denied.

### F.    Ground Six

Palumbo asserts that Counsel was ineffective for failing to object to the state's misrepresentations during closing argument. (Doc. 1 at 46-47). Specifically, he asserts that the prosecutor erroneously argued that witnesses observed A.L. acting out sexual behavior with dolls after the incident and that her sexualized behavior was a result of Palumbo's actions. (*Id.*). Palumbo urges that witnesses had actually testified prior to trial that the child's sexual behavior with her dolls began before the incident in question. (*Id.* at 47). He argues that the prosecutor's

---

[7] Because this Court's inquiry is an objective one, Counsel's *actual* motivation is irrelevant on federal habeas review. *See Castillo v. Sec'y, Fla. Dep't of Corr.*, 722 F.3d 1281, 1285 n.2 (11th Cir. 2013) ("The relevant question under *Strickland*'s performance prong, which calls for an objective inquiry, is whether any reasonable lawyer could have elected not to object for strategic or tactical reasons, even if the actual defense counsel was not subjectively motivated by those reasons.").

misstatements constituted prosecutorial misconduct and that Counsel was constitutionally ineffective for failing to object. (*Id.*).[8] Finally, he urges that the prosecutor "states that the incident in question psychologically affected the alleged victim" but that "there was no testimony or other evidence presented to show that the victim was psychologically affected by the incident in question." (*Id.* at 48). Palumbo asserts that "[h]ad a proper objection resulted in preservation of the issue for direct appeal, Mr. Palumbo would have gotten a new trial." (*Id.* at 49).

Palumbo raised this claim in his Rule 3.850 Motion, and the post-conviction court determined that Counsel's performance was not deficient. (Ex. E at 369). The court concluded that the prosecutor's statements were fair comments on the evidence because witness testimony had not precluded a conclusion that A.L.'s actions with the dolls occurred after the incident with Palumbo. (Ex. E. at 369).[9] The post-conviction court also determined that allegations or prosecutorial misconduct should have been raised in direct appeal. (*Id.*).

The ineffective assistance claim regarding A.L.'s behavior with her dolls fails to satisfy *Strickland*'s prejudice prong. On direct appeal, Palumbo unsuccessfully urged that the prosecutor's statements constituted fundamental error. (Ex. C1 at 43-45); *Palumbo v. State*, 52 So. 3d 834 (Fla. 5th DCA 2011). Fundamental error occurs when the alleged error "goes to the foundation of the case or goes to the merits of the cause of action." *Ashford v. State*, 274 So. 2d 517, 518 (Fla. 1973). Prosecutorial misconduct constitutes fundamental error when, but for the misconduct, the jury could not have reached the verdict it did. *See Kilgore v. State*, 688 So.2d 895,

---

[8] Petitioner also argues that the victim's actions of rubbing a doll against her vagina supports his argument that the household in which the victim resided was "hypersexualized" and that Counsel should have objected to the motions in limine with this information. The issue of the motions in limine were discussed in Ground One *supra* and will not be re-visited in this ground.

[9] The post-conviction court recognized that witnesses Holly Prong Hughes and Jessica Light had testified at a pre-trial hearing that the victim would rub her vagina against a doll when she was in kindergarten, prior to the incident. (*Id.*). However, at trial, these witnesses testified that this behavior occurred in 2004, and the amended information charged that the incident occurred between June, 2002 and April 1, 2014. (*Id.*).

898 (Fla. 1996). The Florida Supreme Court has consistently held that a finding on direct appeal that statements by a prosecutor failed to rise to fundamental error precludes a determination of prejudice in the *Strickland* context. *See Lowe v. State*, 2 So.3d 21, 38 (Fla. 2008) ("Because the Court found no fundamental error, Lowe fails to demonstrate that counsel's failure to object to the comments resulted in prejudice sufficient to undermine the outcome of the trial under *Strickland*."); *Chandler v. State*, 848 So.2d 1031, 1046 (Fla. 2003) ("Because Chandler could not show the comments were fundamental error on direct appeal, he likewise cannot show that trial counsel's failure to object to the comments resulted in prejudice sufficient to undermine the outcome of the case under the prejudice prong of the *Strickland* test."); *State v. Spencer*, 216 So. 3d 481, 492 (Fla. 2017) (recognizing differences between the fundamental error standard and prejudice under *Strickland*, and concluding that "the fundamental error standard is no less exacting than the *Strickland* prejudice standard.").

As to Palumbo's claim that Counsel was ineffective for failing to object to insinuation by the prosecutor that A.L. may have been "psychologically affected" by the incident, reasonable competent counsel could have determined that making such an objection would be viewed unfavorably by both the jury and the trial court. Moreover, in *Ruiz v. State,* the Florida Supreme Court noted that "the role of counsel in closing argument is to assist the jury in analyzing [the] evidence, not to obscure the jury's view with personal opinion, emotion, and nonrecord evidence[.]" 743 So. 2d 1, 4 (Fla. 1999). The *Ruiz* court explained that "[t]he assistance permitted includes counsel's right to state his contention as to the conclusions that the jury should draw from the evidence." *Id.* (citing *United States v. Morris*, 568 F.2d 396, 401 (5th Cir. 1978)). The Florida Supreme Court has further stated that "[t]he proper exercise of closing argument is to review the evidence and to explicate those inferences which may reasonably be drawn from the evidence." *Robinson v. State*, 610 So.2d 1288, 1290 (Fla. 1992) (quoting *Bertolotti v. State*, 476 So.2d 130,

134 (Fla. 1985)). Testimony was presented at trial that the incident caused A.L. to have "stomach butterflies", "made her uncomfortable" so that she "didn't know what to say or do," and caused her to feel "yucky." (T. at 277, 283, 284, 284-85). Given the ten-year-old victim's statements, Counsel could have concluded that the prosecutor was merely stating his contention as to the conclusions the jury should draw from the evidence and that he had no grounds on which to object to the prosecutor's statements regarding A.L.'s psychological trauma.

Neither of the issues raised in Ground Six demonstrates that Counsel was constitutionally ineffective or that the state courts' adjudication of the issues was contrary to *Strickland* or based upon an unreasonable determination of the facts. Ground Six is denied.

### G.     Ground Seven

Palumbo asserts that Counsel was ineffective for failing to clarify with witnesses Holly Prong Hughes and Jessica Light whether A.L. acted-out sexually with her dolls before or after the incident involving Palumbo. (Doc. 1 at 51). Specifically, he argues that, at trial, neither witness stated whether the observed sexual acts with the doll occurred before or after A.L. was molested, and that Counsel's failure to clarify left the jury with the impression that the behavior with the dolls occurred after (and was somehow caused by) the incident in question. (*Id.*).

The post-conviction court denied this claim on the ground that neither witness had explicitly denied at trial that A.L.'s behavior with her dolls occurred prior to the incident. The post-conviction court also determined that Palumbo could not demonstrate *Strickland* prejudice because "there is no reasonable probability that clarification of the timing would have made a difference in the outcome of the trial, even if the victim began this behavior before the date of the incident charged in this case." (Ex. E. at 370).

A review of the evidence does not clarify exactly when A.L. was observed rubbing her vagina against a doll. At a pre-trial evidentiary hearing, Hughes and Light did acknowledge on

cross examination that when A.L. was in kindergarten, prior to the incident, they observed her rubbing her vagina on a stuffed doll. (Doc. 15-1 at 32, 55). At trial, neither witness testified whether the observed behavior occurred before or after the alleged dates of the molestation. (T. at 234, 253-55, 258, 357). Notably, the timing of the behavior was irrelevant to whether Palumbo molested A.L. In fact, A.L.'s "sexualized" behavior would have provided no excuse for Palumbo's actions and could have been viewed by the jury as a distasteful argument from Palumbo that his sexual activity with A.L. was somehow "consensual." Reasonable competent counsel could have decided against calling further attention to A.L.'s behavior by forcing the witnesses to pin down the exact dates of their observations. In addition, the state court's conclusion that the outcome of the trial would not have differed even had Counsel clarified the timing of the observation was not "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *White*, 134 S. Ct. at 1702. The state courts reasonably denied Ground Seven.

## H.     Ground Eight

Palumbo asserts that Counsel was ineffective for failing to object or to move for a mistrial when A.L. held a teddy bear while testifying. (Doc. 1 at 57). Counsel asserts that allowing the child to hold the teddy bear interfered with his defense strategy—namely, "that the 'crime' was made up and that the jury should consider her credibility." (*Id.*). Palumbo asserts that the combination of testimony regarding A.L.'s sexual actions with a stuffed animal and the teddy bear "certainly led the jury into wondering how such an alleged dreadful event could have happened to such a young child." (*Id.* at 59).

The post-conviction court denied this claim because "Counsel had no basis to object to allowing the child victim to hold a teddy bear while testifying, because there is nothing to prohibit such an accommodation. Furthermore there is no reasonable probability that the Court would have

granted a mistrial." (Ex. E at 371). The post-conviction court "adopted" the analysis set forth in *State v. Dixon*, 337 S.W.3d 733, 742-44 (Mo. Ct. App. 2011) where a reviewing court found no error in allowing a child to hold a comfort item during testimony. (*Id.*).

Respondents note that they could find no Florida cases on point, but that, given that other jurisdictions that permit child witnesses to "hold a doll, toy, or other comfort item on the witness stand or to be accompanied by a parent, victim advocate, or other trusted individual, such an objection would not have been sustained in this case." (Doc. 13 at 27) (collecting twenty-four cases). Respondents' argument is well taken. The extensive case law allowing a child victim to testify while holding a comfort item could have convinced reasonable competent counsel that he had no grounds on which to object. Accordingly, this claim fails to satisfy either prong of the *Strickland* test, and the state courts' rejection of Ground Eight was neither contrary to *Strickland* nor based upon an unreasonable determination of the facts. The claim is denied.

## I.     Ground Nine

Palumbo asserts that the cumulative effect of Counsel's errors denied him his Sixth Amendment right to counsel. (Doc. 1 at 61). This Court need not determine whether, under current Supreme Court precedent, cumulative error claims can ever succeed in showing that the state court's adjudication on the merits was contrary to or an unreasonable application of clearly established federal law. Nor must the Court determine whether this claim is exhausted. 28 U.S.C. § 2254 (b)(2). Palumbo has not shown an error of constitutional dimension with respect to any federal habeas claim. Therefore, he cannot show that the cumulative effect of the alleged errors deprived him of fundamental fairness in the state criminal proceedings. *See Morris v. Sec 'y, Dep't of Corr.*, 677 F.3d 1117, 1132 (11th Cir. 2012)(refusing to decide whether post-AEDPA claims of cumulative error may ever succeed in showing that the state court's decision on the merits was contrary to or an unreasonable application of clearly established law, but holding that petitioner's

claim of cumulative error was without merit because none of his individual claims of error or prejudice had any merit); *Forrest v. Fla. Dep't of Corr.*, 342 F. App'x 560, 565 (11th Cir. 2009); *Hill v. Sec'y, Fla. Dep't of Corr.*, 578 F. App'x 805 (11th Cir. 2014)(same). Palumbo is not entitled to federal habeas relief.

Any of Palumbo's allegations not specifically addressed herein have been found to be without merit. Because the petition is resolved on the record, an evidentiary hearing is not warranted. *See Schriro v. Landrigan*, 550 U.S. 465, 474 (2007).

Accordingly, it is hereby **ORDERED AND ADJUDGED** as follows:

1.    The 28 U.S.C. § 2254 petition for habeas corpus relief filed by Patrick Palumbo is **DENIED**, and this case is dismissed with prejudice.

3.    Palumbo is **DENIED** a certificate of appealability.[10]

4.    The Clerk of Court is directed to terminate any pending motions, enter judgment accordingly, and close this case.

**DONE AND ORDERED** at Orlando, Florida, this ___ day of December, 2017.

G. KENDALL SHARP
SENIOR UNITED STATES DISTRICT JUDGE

SA: OrlP-4
Copies to:  Counsel of Record

---

[10] A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of appealability ("COA"). "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing, Palumbo must demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller–El*, 537 U.S. at 335–36. Palumbo has not made the requisite showing in these circumstances. Because Palumbo is not entitled to a certificate of appealability, he is not entitled to appeal *in forma pauperis.*